IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02754-GPG

NEWTON J. CANTRELL,

      Plaintiff,

v.

T.K. COZZA RHODES, Warden,
D. MCELVOY, N-A Unit Manager,

      Defendants.

_____

ORDER TO DISMISS IN PART AND TO DRAW CASE

_____

      Plaintiff, Newton J. Cantrell, is in the custody of the federal Bureau of Prisons

(BOP) and is incarcerated at the Correctional Institution in Florence, Colorado.  He has

filed *pro se* a Complaint pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown*

*Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

      On October 15, 2014, Magistrate Judge Boyd N. Boland reviewed the Complaint

and determined that it was deficient for several enumerated reasons.  Magistrate Judge

Boland directed Mr. Cantrell to file an Amended Complaint within thirty (30) days of the

October 15 Order.  Plaintiff was advised that failure to comply would result in the

dismissal of some or all of this action without further notice.  Mr. Cantrell did not file an

Amended Complaint by the court-ordered deadline.  Accordingly, the Court reviews the

sufficiency of the Complaint to determine if summary dismissal is warranted.  *See*

D.C.COLO.LCivR 8.1(b) and (c).

      Mr. Cantrell has been granted leave to proceed *in forma pauperis*, pursuant to 28

U.S.C. § 1915.  Subsection (e)(2)(B) of § 1915 requires a court to dismiss *sua sponte* an action at any time if the action is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief.  A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim.  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

The Court must construe the Complaint liberally because Mr. Cantrell is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not act as an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  For the reasons discussed below, the Complaint will be dismissed in substantial part, and the remainder will be drawn to a presiding judge and, if appropriate, to a magistrate judge.

## I.  The Complaint

Mr. Cantrell alleges in the Complaint that in late 2013, and in February 2014, Defendant McElvoy, his unit manager, refused to allow him to correspond with the woman whom Plaintiff considered his "wife."  (ECF No. 1, at 3).  Plaintiff further alleges that the BOP "approved" his correspondence with his "wife" for ten years before she was diagnosed with cancer and transferred from FCI-Dublin, California, to Federal Medical Center Carswell, in Fort Worth, Texas.  (*Id.* at 10, 14).  According to Mr. Cantrell, the Defendants denied his requests for continued correspondence because there was no official marriage certificate in his prison file and BOP policy does not recognize a traditional Native American marriage.

Plaintiff asserts in the Complaint that a Native American marriage

2

> is considered to be the equivalent of a . . . common law marriage that is
> formed without a certificate of marriage or solemnization.  My wife and I
> both being from the State of Montana, our marriage is covered by
> Montana State law MCA 40-1-403 which recognizes common law
> marriages in our home State of Montana.

(*Id.* at 4).  Mr. Cantrell states that his "wife" died from cancer on March 8, 2014, without

any contact from him for several months.  (*Id.*).  He alleges that he "told both McElvoy

and the Warden Rhodes at least 3 times over a six month period that Indian marriages

do not require a certificate of marriage," but his "wife died while we were waiting for

these women to decide if we will be allowed to communicate with each other or not."

(*Id.* at 4).  Mr. Cantrell claims that the Defendants' refusal to recognize his Native

American traditional marriage violated the 1868 Fort Laramie Treaty, 15 Stat. 635, and

the American Indian Religious Freedom Act ("AIRFA"), 42 U.S.C. § 1996.

Mr. Cantrell also alleges in the Complaint that for approximately seven years, eye

doctors at the prison informed him that his loss of vision was due to cataracts, but an

August 2014 examination outside the prison revealed that the vision impairment  was

due to a broken blood vessel.  Plaintiff asserts that he may have suffered permanent

vision loss because of the negligence of unidentified prison eye doctors.

Mr. Cantrell seeks an award of damages.

**II.  Analysis of Claims**

    **A.      Denial of Correspondence with "Wife"**

        **1.  claims based on violations of federal treaty and statute**

Mr. Cantrell claims that the Defendants' refusal to recognize his Native American

traditional marriage violated the 1868 Fort Laramie Treaty, 15 Stat. 635, and the

American Indian Religious Freedom Act ("AIRFA"), 42 U.S.C. § 1996.

Plaintiff cannot recover damages from the Defendants based on an alleged violation of the 1868 Fort Laramie Treaty because Defendants are not contracting parties to the Treaty, and there is no language in the Treaty that would support a claim for damages against a non-contracting party. *See Skokomish Indian Tribe v. United States*, 410 F.3d 506, 513 (2005).

Further, the AIRFA does not afford Plaintiff a basis for relief because Congress did not create judicially enforceable individual rights in the AIRFA. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 455 (1988); *see also Henderson v. Terhune,* 379 F.3d 709, 711 (9th Cir. 2004) ("AIRFA is simply a policy statement and does not create a cause of action or any judicially enforceable individual rights.").

Accordingly, Mr. Cantrell's purported claims under the 1868 Fort Laramie Treaty, 15 Stat. 635, and the American Indian Religious Freedom Act ("AIRFA"), 42 U.S.C. § 1996, will be dismissed as legally frivolous.

### 2.  First Amendment claim

The Complaint can be construed liberally as also asserting a deprivation of Mr. Cantrell's First Amendment right to communicate with persons outside the prison.

In the First Amendment context, the Supreme Court has acknowledged that "federal courts must take cognizance of the valid constitutional claims of prison inmates. Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citation omitted).  However, prisoners' rights may be restricted in ways that "would raise grave First Amendment concerns outside the prison context." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).

4

In particular, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

To state an arguable claim for deprivation of his First Amendment rights, Mr. Cantrell must allege sufficient facts to suggest that the Defendants' actions in preventing him from corresponding with an inmate whom he considered to be his "wife" was not reasonably related to legitimate penological interests. *See Gee v. Pacheco*, 627 F.3d 1178, 1187-88 (10th Cir. 2010).

The administrative remedy documents attached to the Complaint indicate that Plaintiff's requests to correspond with his "wife" were denied pursuant to BOP Program Statement 5265.11, "Correspondence." (ECF No. 1, at 12).  BOP Program Statement 5265.11 states, in pertinent part:

> An inmate may be permitted to correspond with an inmate confined in any other penal or correctional institution if the other inmate is either a member of the immediate family, or is a party or witness in a legal action in which both inmates are involved. Such correspondence may be approved in other exceptional circumstances, with particular regard to the security level of the institution, the nature of the relationship between the two inmates, and whether the inmate has other regular correspondence.

*See* www.bop.gov/policy/progstat/5265_011.pdf. [1]

A regulation similar to Program Statement 5265.11 was upheld in *Turner*.  The Supreme Court concluded that a state's prohibition on inmate-to-inmate correspondence between institutions, except among immediate family members, "does not unconstitutionally abridge the First Amendment rights of prison inmates." *Turner*, 482 U.S. at 91-93.  Accordingly, Mr. Cantrell must allege facts to show that the

---

[1] The Court may take judicial notice of the contents of the BOP's website.  *See Triplet v. Franklin*, No. 06-6247, 365 F. Appx. 86, 92 n.8 (10th Cir. Feb. 5, 2010) (unpublished) (taking judicial notice of Oklahoma Department of Corrections' website).

Defendants applied a constitutional regulation to him in an unconstitutional manner.

PS 5265.11 defines "spouse" to include a common-law relationship which has previously been established in a state which recognizes this status." *See* www.bop.gov/policy/progstat/5265_011.pdf.  Mr. Cantrell asserts that his common law marriage was valid in the state of Montana, where he and his "wife" formerly resided. *See* MCA 40-1-403 (2014) (recognizing common law marriages); *see also In re Marriage of Swanner-Renner*, 351 Mont. 62, 66, 209 P.3d 238, 241 (Mont. 2009) (stating that a party seeking to establish a common law marriage in Montana must show that "the parties were competent to enter marriage; that there was assumption of a marital relationship by mutual consent and agreement; that they cohabited; and that they acquired the reputation, character and status of marriage in public." (internal state case law citations omitted).

Although Mr. Cantrell's factual allegations do not necessarily demonstrate that he had a valid common law marriage with the federal inmate whom he considered his "wife," it is unclear at this stage of the proceedings why BOP officials allowed Plaintiff to correspond with his "wife" for ten years before the Defendants prohibited the same. Accordingly, the Court finds that Mr. Cantrell has stated an arguable claim against the Defendants under *Bivens* for deprivation of his First Amendment rights.

### B. Deprivation of Adequate Eye Care

Mr. Cantrell cannot maintain a *Bivens* action against the Defendants for the denial of adequate eye care because he fails to allege facts to show that the Defendants were personally involved in treating his eye condition, or interfered with the same.  Magistrate Judge Boland warned Mr. Cantrell in the October 15 Order that personal participation is an essential allegation in a civil rights action. *See Bennett v.*

*Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Kentucky v. Graham*, 473 U.S. 159,

166 (1985).  There must be an affirmative link between the alleged constitutional

violation and each defendant's participation, control or direction, or failure to supervise.

*See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993); *see also Dodds v.*

*Richardson*, 614 F.3d 1185, 1200-1201 (10th Cir. 2010) ("[D]efendant-supervisors may

be liable under § 1983 where an 'affirmative' link exists between the unconstitutional

acts by their subordinates and their 'adoption of any plan or policy. . .–express or

otherwise–showing their authorization or approval of such 'misconduct.'") (quoting *Rizzo*

*v. Goode*, 423 U.S. 362, 371 (1976)).  A supervisor defendant, such as Warden Cozza-

Rhodes, may not be held liable for the unconstitutional conduct of her subordinates on a

theory of respondeat superior.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (stating

that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead

that each Government-official defendant, through the official's own individual actions,

has violated the Constitution.").

Further, negligent conduct does not violate the Constitution.  *See Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 828

(stating that the Eighth Amendment is violated when a prison official acts with deliberate

indifference to a substantial risk of serious harm to an inmate).  Mr. Cantrell's

allegations about the lack of adequate medical care for his eye condition are insufficient

to trigger Eighth Amendment concerns.

The *Bivens* claim against the Defendants based on a denial of adequate eye

care will be dismissed as legally frivolous.  Accordingly, it is

ORDERED that the claims for monetary relief based on a violation of the 1868 Fort Laramie Treaty, 15 Stat. 635, and the American Indian Religious Freedom Act ("AIRFA"), 42 U.S.C. § 1996, are DISMISSED as legally frivolous.  It is

FURTHER ORDERED that the *Bivens* claims based on an alleged denial of adequate eye care are DISMISSED as legally frivolous.  It is

FURTHER ORDERED that the *Bivens* claim against Defendants based on an alleged denial of Mr. Cantrell's First Amendment rights shall be drawn to a presiding judge and, if appropriate, to a magistrate judge.

DATED December 1, 2014, at Denver, Colorado.

BY THE COURT:


  s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court